IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LYNDA L. CROCKER,

              Plaintiff,

                                   Civil No. 06-6189-ST

      v.

MICHAEL J. ASTRUE,[1]                       OPINION AND ORDER
Commissioner, Social Security
Administration,

              Defendant.
_____

STEWART, Magistrate Judge:

      Plaintiff, Lynda L. Crocker ("Crocker"), seeks judicial review of the Social Security

Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB")

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of the Social Security Administration. He is substituted as the defendant in this action pursuant to FRCP 25(d)(1) and 20 USC § 405(g).

1 - OPINION AND ORDER

under Title II of the Social Security Act.  This court has jurisdiction under 42 USC §§ 405(g) and

1383(c).  All parties have consented to allow a Magistrate Judge to enter final orders and

judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).  For the reasons that

follow, the Commissioner's decision is REVERSED and REMANDED for further proceedings

consistent with this Opinion and Order.

## BACKGROUND

Born in 1963, Crocker has an eighth grade education  Tr. 74, 93, 616.[2]  Between 1990

and 2003 she worked as custodian, dishwasher, and food service worker.  Tr. 88, 128.

Crocker applied for DIB on December 1, 2003, alleging disability since June 17, 2002

due to type I insulin dependent diabetes, numbness in her arms, and low blood sugar levels.

Tr. 74-76, 87.  Her application was denied initially and upon reconsideration.  Tr. 52-54, 58-62.

A hearing was held before an Administrative Law Judge ("ALJ") on November 10, 2004.

Tr. 612-43.  On June 21, 2005, the ALJ found Crocker not disabled.  Tr. 21-33.  The Appeals

Council denied review of Crocker's application on June 23, 2006, making the ALJ's decision the

Commissioner's final decision.  Tr. 12-15.  Crocker appeals that decision.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five

steps in determining disability under the meaning of the Act.  20 CFR § 404.1520; *Bowen v.*

*Yuckert*, 482 US 137, 140-42 (1987).  Crocker challenges the ALJ's evaluation of the evidence

and his conclusion at step five.

---

[2]  Citations to "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on October 24, 2006 (docket #9).

At step one, the ALJ determines if the claimant is performing substantial gainful activity ("SGA"). If so, then the claimant is not disabled. 20 CFR § 404.1520(a)(4)(i).

At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the 12 month duration requirement. 20 CFR §§ 404.1509; 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, then she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 CFR § 404.1520(a)(4)(iii). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 CFR § 404.1520(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). The ALJ uses this information to determine if the claimant can perform past relevant work at step four. 20 CFR § 404.1520(a)(4)(iv).

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 US at 141-42; *Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999); 20 CFR §§ 404.1520(a)(4)(v), 404.1520(f).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F3d at 1098. If the process reaches step five, then the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in "significant numbers" the national

economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 CFR §§ 404.1566, 404.1520(g).

## THE ALJ'S FINDINGS

At step one in the sequential proceedings, the ALJ found that Crocker engaged in SGA between March 2003 and September 2003 and that the prior period from the alleged onset date of June 12, 2002, through February 2003 was less than 12 months. Tr. 23, 32. Therefore, the ALJ found that she was not disabled during that period. *Id*.

At step two, the ALJ found that Crocker established the severe impairments of juvenile onset insulin dependent diabetes mellitus, a history of neurological complaints without explanation from results of examination or testing, and a history of reported neuropathy, gastropathy, and retinopathy, without reported gait changes and with essentially normal neurological examination. Tr. 26-27, 32. He also found that her hypothyroidism, possible diagnosis of fibromyalgia, and psychological conditions were not severe impairments. Tr. 26-27.

At step three, the ALJ found that Crocker's impairments were not sufficiently severe to meet or equal a "listed" impairment. Tr. 27, 32.

The ALJ then found Crocker "not totally credible" regarding her alleged limitations upon her ability to work. *Id.* As a result, the ALJ assessed Crocker's RFC as follows:

> She is able to lift/carry 10 pounds frequently, and 20 pounds occasionally. She is able to balance occasionally, cannot climb ladders, and she should avoid dangerous hazards.

*Id*.

///

4 - OPINION AND ORDER

Based on this RFC, the ALJ concluded that Crocker could not return to her past relevant work at step four. Tr. 30, 32. At step five, the ALJ found that Crocker retains the ability to perform significant work in the national economy as, for example, a merchandise marker, small products assembler, and garment bagger. Tr. 31-32. Thus, the ALJ found Crocker not disabled under the Act at any time through the date of his decision. *Id*.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004). This court may weigh "both the evidence that supports and [that which] detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F2d 747, 750 (9th Cir 1989). The reviewing court "may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F2d at 750; *see also Batson*, 359 F3d at 1193.

## ANALYSIS

Crocker contends the ALJ improperly assessed her credibility, improperly rejected her testimony and that of a lay witness, and improperly evaluated a treating physician's opinion.

## I. Crocker's Credibility

The ALJ found that Crocker's "subjective complaints are not totally credible" (Tr. 27) and then cited several "factors that reflect adversely" on her credibility. Tr. 29. Those factors include Crocker's 14-year work history prior to her alleged onset date and seven months of SGA

thereafter while carrying a diabetic diagnosis, her non-compliance with her diabetic treatment regime, and inconsistent medical evidence.  Tr. 28-29.

Crocker contends this is an insufficient credibility determination.  She specifically challenges the ALJ's conclusions regarding her work history, her reference to recommendations that she cease smoking, and his assertion that objective evidence did not support her testimony regarding her blood sugar levels and peripheral neuropathies.

### A.  <u>Legal Standard</u>

Once a claimant shows an underlying impairment exists which could create some degree of the claimed symptoms and if no evidence of malingering exists, the ALJ "may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."  *Smolen v. Chater*, 80 F3d 1273, 1284 (9th Cir 1996).  The ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995).  In making credibility findings, the ALJ may consider the claimant's treatment history and observations of physicians regarding symptoms.  *Smolen*, 80 F3d at 1284.  The ALJ may also consider the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Id.*  Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  *Id.*

///

///

///

6 - OPINION AND ORDER

### B.  Past Work History

The ALJ rejected Crocker's assertions of complications from diabetes in part by noting that for "14 years prior to her alleged onset date, she worked consistently at [an SGA] level in spite of her diabetic condition, while the treating medical records does [*sic*] not evidence any worsening in her diabetic condition."  Tr. 28 (citation omitted).  He also noted that she had seven months of post-onset employment at a light/medium level of work.  *Id.*

An ALJ may consider a claimant's work history in making a credibility decision.  *Smolen*, 80 F3d at 1284.  A positive work history generally supports a positive credibility finding.  *See Thomas v. Barnhart*, 278 F3d 947, 959 (9th Cir 2002).  Here, in contrast, the ALJ suggested the inverse.  In addition, as discussed below, the record fails to support the ALJ's conclusion that Crocker's diabetic condition did not worsen over time.  Accordingly, the ALJ erred by suggesting that Crocker's previous work history detracts from her present credibility.

### C.  Smoking

The ALJ quoted Crocker's physician's advice that she cease smoking in order to minimize risk of heart attack, stroke, and detrimental effects on her personal health.  Tr. 29.  He then stated:

> In this context, Ms. Crocker is specifically advised that *pursuant to 20 CFR [§] 404.1530, she is required to comply with prescribed medical treatment if that treatment can restore the ability to work.* Additionally, the claimant's failure to stop smoking in light of repeated medical advice is inconsistent with the level of symptoms reported and reflects adversely on her credibility.

*Id.* (emphasis in original).

The cited regulation states: "In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work."  20 CFR § 404.1530.  It is

permissible to deny benefits to a diabetic who fails to follow medical advice to stop smoking, but first the ALJ must "examine the medical conditions and personal factors that bear on whether [a claimant] can reasonably remedy his impairment' and make specific findings." *Byrnes v. Shalala*, 60 F3d 639, 641 (9th Cir 1995), citing *Doddrill v. Shalala*, 12 F3d 915, 919 (9th Cir 1993). Here the ALJ did not engage in that required analysis because he did not deny benefits to Crocker based on her failure to stop smoking. Instead, the ALJ simply advised Crocker of the regulation and then found that her failure to stop smoking impaired her credibility.

As noted by the Commissioner, it is permissible to determine a claimant's credibility based on an unexplained failure to follow prescribed treatment. An "individual's statements may be less credible if . . . the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p at *7, 1996 WL 374186 (July 2, 1996). The problem here is that in his credibility determination, the ALJ specifically tied Crocker's failure to stop smoking with "the level of symptoms reported." However, the record contains no link between Crocker's smoking and the level of her symptoms. The only connection in the record between medical advice to Crocker to stop smoking and her symptoms are references to Crocker's need to stop smoking in order to prevent heart attack and stroke (Tr. 180), which is not the basis of her alleged disability, and to receive narcotic pain medication for her chronic pain (Tr. 527), which relates only to treatment, not the cause, of her symptoms. Nothing in the record ties smoking to Crocker's allegedly disabling symptoms from diabetes. Absent that connection, Crocker's failure to stop smoking is not a clear and convincing reason to reject her testimony.

///

8 - OPINION AND ORDER

### D.  **Objective Medical Evidence**

_____An ALJ may consider the medical record in concert with other credibility factors.

*Smolen*, 80 F3d at 1284, SSR 96-7p at *5, 1996 WL 374186 (July 2, 1996).  The ALJ found that

that objective medical evidence "does not support a finding that the claimant's diabetes is

uncontrolled, or that she has a frequency and severity of hypoglycemic events which significantly

affect[] her ability to work."  Tr. 28.  He also found that "there is no objective support for the

claimant's complaints of neuropathies of both upper and lower extremities, with the only

exception being some evidence of some "early" carpal tunnel in her left non-dominant arm."  *Id.*

As noted by the ALJ, at times Crocker's blood sugar was under control.   In April 2003,

August 2004, and February 2005, Crocker's treating physician noted that her blood sugar was

under "good" and "excellent" control.  Tr. 238 (4/25/03), 288 (8/25/04), 527 (2/11/05).

However, the ALJ disregarded many other references in the record showing that Crocker's blood

sugar management varied throughout the period in question.  In April 2004, Crocker reported

difficulty controlling her blood sugar levels which ranged from 380 to 38.  Tr. 236.  In July 2004,

her blood sugar levels again ranged widely from a low of 17 to a high of 396.  Tr. 289.  In August

2004, Robert I. Hughes, D.O., referred Crocker to OHSU because of her poor glycemic control,

noting that her blood sugar records ranged from 31 to 568.  Tr. 288.  In September 2004,

Crocker's roommate reported more hypoglycemic episodes, requiring Dr. Hughes to adjust her

insulin regimen.  Tr. 285.  In October, 2004, Crocker reported hypoglycemia on an "almost

daily" basis.  Tr. 300. Finally, Crocker's lack of control was confirmed in February 2005 when a

continuous glucose monitoring sensor revealed sustained, undetected lows in her blood sugar

level.  Tr. 528.  A change in her insulin regime in January 2005 reduced the hypoglycemic

events, but Crocker still suffered from "wide glucose excursions." Tr. 528, 530. Between

August 2005 and February 2006, providers repeatedly characterized Crocker's diabetic

management as "brittle" with "hypoglycemic unawareness" (an inability to tell that blood sugar

is dropping). Tr. 565 (2/10/06), 572 (1/11/06), 574 (11/23/05), 577-79 (8/29- 9/22/05), 586

(8/24/05). In August 2005 Crocker lost consciousness due to extreme hypoglycemia with an

undetectable blood sugar level. Tr. 554-55. For these reasons, the ALJ's reliance upon objective

medical evidence to discount Crocker's reports of hypoglycemia is unsupported by the record.

The record also shows that between June 1990 and January 2004 Crocker received

preliminary  diagnoses of diabetic neuropathy. Tr. 197 (1/15/04), 238 (4/25/03), 247 (4/19/01),

307 (5/19/03), 369 (6/14/90). Crocker received affirmative neuropathy diagnoses between

February 1999 and the close of the record in February 2006. Tr. 320 (2/5/99), 564 (2/17/06), 572

(1/11/06), 576 (10/21/05), 586 (8/14/05). Thus, the ALJ's rejection of Crocker's diabetic

neuropathy testimony is clearly contradicted by the record.

**E.  Conclusion**

The ALJ inadequately cited Crocker's work history and smoking history as negative

credibility factors. The  ALJ failed to discuss other credibility factors, such as Crocker's

activities of daily living. The only remaining credibility decision rests upon the ALJ's

interpretation of the medical evidence which is not supported by the record. Therefore, the ALJ

erred by finding Crocker not totally credible.

///

///

///

## II.  Medical Source Statements

Crocker contends the ALJ failed to appropriately evaluate a disability opinion rendered by her treating physician, Dr. Hughes.  On May 17, 2004, Dr. Hughes submitted a letter summarizing Crocker's treatment relating to her type I diabetes, depression, anxiety, and chronic pain syndrome.  Tr. 234.  He concluded by stating: "Unfortunately a functional capacity evaluation is beyond the patient's ability to pay for it.  Based on her fairly extensive type I diabetes, her previous history of multiple hypoglycemic episodes while at work and her current state of depression and anxiety, at least for the time being, the patient's disabilities seem to be precluding her from work."  *Id.*

### A.  Legal Standard

A treating physician's opinion is generally accorded greater weight than an examining physician's opinion.  *Edlund*, 253 F3d at 1157.  The ALJ must give specific, legitimate reasons supported by substantial evidence for rejecting a controverted opinion from a treating physician and "clear and convincing reasons" for rejecting an uncontroverted opinion.  *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005).   This evaluation may "set out a detailed and thorough summary of the facts and conflicting clinical evidence."  *Magallanes*, 881 F2d at 751.  The opinion of the treating physician, however, is not necessarily conclusive to the ultimate issue of disability which is reserved for the Commissioner to decide.  20 CFR § 404.1527(c)(1); *see also Morgan v. Comm'r*, 169 F3d 595, 600 (9th Cir 1999).

///

///

///

11 - OPINION AND ORDER

## B.  Dr. Hughes' Vocational Opinion

The ALJ rejected Dr. Hughs' opinion because it "was clearly based on subjective complaints at the office visit on that date, which are found not fully credible herein."  Tr. 29. This reason is not based on the record.  Between April 2004 and May 2005, Dr. Hughes treated Crocker for her diabetes and other concerns.  His notes show treatment for diabetes, renal insufficiency, chronic bilateral shoulder pain, "early satiety" (nausea, fullness, and pain after eating), hypothyroidism, depression, anxiety, and chronic pain syndrome throughout this period. Tr. 235, 272-73, 285, 288-89, 299-300, 527, 531, 533, 551-53.  Between February and July 2005 Dr. Hughes additionally noted fibromyalgia, carpal tunnel syndrome and chronic pain syndrome, as well as Crocker's smoking cessation efforts.  Tr. 551-53.

An ALJ is not required to discuss every piece of evidence in the record, but may not selectively analyze the evidence.  *Howard v. Barnhart*, 341 Fd 1006, 1012 (9th Cir 2003).  This court's review of Dr. Hughes' treatment notes finds them appropriately based upon clinical examination and testing, rather than based solely on Crocker's subjective reports.  Thus, the ALJ erred in predicating his rejection of Dr. Hughes' treatment notes upon an inadequate credibility finding.  Additionally, the ALJ failed to cite any treating or examining sources contradicting Dr. Hughes' opinion regarding Crocker's diabetic condition and related complications.

The ALJ also rejected Dr. Hughes' opinion as limited "to the time being," which "does not satisfy the 12 month durational requirement of the regulations."  Tr. 29.  An impairment must last, or be expected to last 12 months.  20 CFR § 404.1509.  Dr. Hughes' statement is ambiguous regarding the expected duration of Crocker's impairment.  However, on November 8, 2004, Dr. Hughes wrote a second letter reviewing Crocker's treatment between August 11 and

12 - OPINION AND ORDER

November 1, 2004, concluding that Crocker's "chronic medical problems including type I
diabetes and hypothyroidism with a chronic pain syndrome including trigeminal neuralgia and
left shoulder pain remain unchanged." Tr. 298. The parties disagree whether this letter means
that the severity of Crocker's condition remained unchanged, preventing her from working, or
whether only her "chronic medical conditions" remained unchanged. The ALJ did not discuss
this letter with respect to any 12-month period of impaired function.

### C. Conclusion

The ALJ failed to note that Dr. Hughes' treatment notes were based upon clinical
findings, as well as on Crocker's subjective reports. Because the ALJ erred by rejecting
Crocker's credibility, he also erred by rejecting Dr. Hughes' medical and vocational opinions
based upon this negative credibility finding. The ALJ also failed to consider Dr. Hughes'
opinions in concert regarding any 12-month period of impaired function. Upon remand, the ALJ
must evaluate Dr. Hughes' opinions in light of a revised credibility finding and under the proper
legal standards.

## III. Lay Witness Testimony

Crocker contends that the ALJ erred in rejecting testimony of her partner, Richard Smith.
After reviewing Crocker's credibility, the ALJ found Smith's testimony:

> not fully credible, for all of the above reasons, and because his
> assertion that the claimant's allegedly disabling diabetes has
> progressively worsened is contradicted by treating medical records
> which show the condition to be "controlled" and obviously
> constitutes advocacy for his girlfriend in the context of the
> secondary gain incentive of bringing additional disability income
> into their household.

Tr. 29.

### A.  **Legal Standard**

The ALJ has a duty to consider lay witness testimony.  20 CFR §§ 404.1513(d); 404.1545(a)(3); *Lewis v. Apfel*, 236 F3d 503, 511 (9th Cir 2001).  Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F3d 915, 918-19 (9th Cir 1993).  The ALJ may not reject such testimony without comment, but may reject lay testimony inconsistent with the medical evidence.  *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996); *Lewis*, 236 F3d at 512.  If an ALJ rejects purpose lay witness testimony entirely, he must give reasons germane to the witness.  *Nguyen*, 100 F3d at 1467.

### B.  **Discussion**

The ALJ's reasoning for rejecting Smith's testimony is primarily predicated upon his rejection of Crocker's testimony.  Because the ALJ improperly rejected Crocker's testimony, this court cannot endorse such consequential rejection of Smith's testimony.  Furthermore, the ALJ improperly inferred that Smith's testimony was motivated by secondary gain.  Disability applicants should not be chastised for secondary gain simply because they have applied for benefits.  *See Ratto v. Sec'y for Health and Human Services*, 839 F Supp 1415, 1428 (D Or 1993).  Because the ALJ failed to give reasons adequately germane to Smith for rejecting his testimony, he erred by rejecting Smith's testimony.

## IV.  **Remand**

After finding that the ALJ erred, this court has discretion to remand for further proceedings or for immediate payment of benefits.  *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir 2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is

appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision.  *Rodriguez v. Bowen*, 876 F2d 759, 763 (9th Cir 1989).  Thus, improperly rejected evidence should be credited as true and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited."  *Harman*, 211 F3d at 1178, citing *Smolen*, 80 F3d at 1292.  Where it is not clear the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. *Connett v. Barnhart,* 340 F3d 871, 876 (9th Cir 2003).

Here, the ALJ improperly rejected both Crocker's and Smith's testimony.  However, even if credited, this evidence does not clearly establish disability.  Crocker stated that she episodically experiences extraordinarily low blood sugar and that this hypoglycemia interferes with her ability to complete work activity without assistance or close supervision.  Tr. 618, 622-23.  The vocational expert did not state that these limitations preclude employment in the national economy.

Crocker's counsel subsequently suggested additional limitations.  His first submission to the vocational expert indicated the need to change position at will.  Tr. 641.  His second submission indicated a person "not able to sustain production pace."  Tr. 642.  The vocational expert stated that a person requiring postural changes could sustain competitive employment, but that inability to sustain production would preclude employment.  Tr. 642.  While Crocker stated

15 - OPINION AND ORDER

that she could not maintain the expected work pace at her janitorial job, her employer stated that Crocker met "normal production and quality standards," and "only occasionally" failed to sustain adequate performance.  Tr. 98, 114.  For this reason, the record does not establish that Crocker's alleged inability to sustain a competitive pace would preclude employment.  An ALJ need not rely upon unsupported vocational testimony.  *Osenbrock v. Apfel*, 240 F3d 1157, 1164-65 (9th Cir 2001).

In sum, Crocker's testimony suggests some vocational limitations, but does not establish that her supported limitations preclude employment in the national economy at step five.  Further proceedings are necessary for the ALJ to properly evaluate Crocker's testimony.  The ALJ must also reevaluate Dr. Hughes' opinion, reassess Crocker's RFC accordingly and make appropriate findings at step five in the sequential proceedings.

## **ORDER**

This court concludes that the Commissioner's decision that Crocker is not entitled to benefits under Title  II of the Social Security Act is not based upon correct legal standards.  The Commissioner's decision is reversed and remanded for further proceedings consistent with this Opinion and Order, pursuant to sentence four of 42 USC § 405(g).

DATED this 18th day of May, 2007.

_/s/ Janice M. Stewart _____
Janice M. Stewart
United States Magistrate Judge